UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAMELIA SERGHIE,<br><br>Plaintiff,<br>v.<br><br>STRAUSS GROUP, LTD., KENOVER MARKETING CORP. d/b/a KAYCO, and DOE CORPS. 1-10,<br><br>Defendants. | MEMORANDUM & ORDER<br>25-CV-02611 (NRM) |

NINA R. MORRISON, United States District Judge:

Plaintiff Camelia Serghie brings this action against Defendants Strauss Group Ltd. ("Strauss"), Kayco, and Doe Corporations, alleging claims under New York state law for strict product liability, breach of warranty, and negligence. She seeks compensatory and punitive damages. Presently before the Court is Defendant Strauss's motion to dismiss for failure to state a claim, in which Kayco joins. For the reasons that follow, the motion to dismiss is denied.

## BACKGROUND

### I. Factual Background

The following facts are drawn from the First Amended Complaint ("Complaint"), Am. Compl. ("Compl."), ECF No. 11, and they are taken as true for the purposes of the instant motion. *See Dorking Genetics v. United States*, 76 F.3d 1261, 1263 (2d Cir. 1996).

Plaintiff was a regular consumer of "Pesek Zman chocolate bars," purchasing these products frequently from 2018 until March 2022. Compl. ¶ 39. These Pesek

Zman chocolate bars were manufactured by Strauss and distributed in New York by Kayco. *Id.* Strauss is an "Israeli-based, multinational food and beverage company located in Petach Tikvah, Israel," and Kayco is a New Jersey-based corporation that distributes Strauss's chocolate products in New York. *Id.* ¶¶ 2, 5. Strauss produces chocolate products that are distributed worldwide, including the United States and in New York. *Id.* ¶ 2. The products are available in supermarkets and on online marketplaces such as Amazon. *Id.* ¶ 2.

In 2022, Plaintiff regularly consumed Pesek Zman chocolate bars in January, February, and March. *Id.* ¶ 54. On February 13, 2022 and March 1, 2022, Plaintiff purchased two boxes of Pesek Zman bars on Amazon that she now alleges were contaminated. *Id.* ¶ 37, 43. The specific brand was labeled "Elite Pesek Zman, Big Bite (18 Bars) Milk Chocolate Bar." *Id.* ¶ 44. She estimates that she did not consume these specific chocolate bars (the "Contaminated Chocolates") until the second or third week of March 2022. *Id.* ¶ 46. After consuming the Contaminated Chocolates, Plaintiff "felt sick with symptoms consistent of a severe Salmonella infection." *Id.* ¶ 51. These symptoms included abdominal pain, upset stomach, nausea, chest pain, fever, and sharp pain in her left shoulder, which left her bedridden. *Id.* ¶ 52. Plaintiff did not experience these or other negative symptoms in the months of January and February, prior to consuming the Contaminated Chocolates. *Id.* ¶ 54. She also reports that she "was in generally good health, with no major health problems" prior to 2022 and experiencing these symptoms. *Id.* ¶ 67.

Because at the time, Plaintiff was unaware of the cause of her symptoms, she

continued to regularly consume the Contaminated Chocolates. *Id.* ¶ 53. At the end of March 2022, Plaintiff visited the emergency room twice, once on March 29, and again on March 30, with an overnight stay into March 31. *Id.* ¶ 55. On March 31, Plaintiff was diagnosed with a splenic artery aneurysm. *Id.* ¶ 52. As alleged in the complaint, aneurysms caused by salmonella gastritis can form in the splenic artery. *Id.* ¶¶ 17, 59. Though she was at the time still unaware of the cause of her symptoms, Plaintiff stopped consuming Pesek Zman chocolates from the date of her diagnosis to April 30. *Id.* ¶ 62.

On April 28, 2022, the FDA announced a recall of "all Elite branded chocolate products made in Israel and manufactured by Strauss, and distributed by Kayco." *Id.* ¶ 26. That recall warned that the products "may potentially be contaminated with Salmonella," and that "[h]ealthy persons infected with Salmonella often experience fever, diarrhea (which may be bloody), nausea, vomiting and abdominal pain. In rare circumstances, infection with Salmonella can result in the organism getting into the bloodstream and producing more severe illnesses such as arterial infections (i.e., infected aneurysms)." *Id.* ¶ 41. The Israeli Ministry of Health found numerous violations on the premises operated by Strauss, "including that maintenance work had been performed in the factory for several months while chocolate was being produced in the vicinity." *Id.* ¶ 31. Strauss also allegedly did not have a director of food safety during this period, and several weeks prior to the Ministry of Health audit, "there was a pigeon infestation in the manufacturing area of the site." *Id.* ¶ 32, 34.

On May 3, 2022, Amazon notified Plaintiff via email that the chocolates she

had ordered on March 1, 2022 had been recalled. *Id.* ¶ 76. That was followed by an additional notice indicating that the chocolates in her February 13, 2022 order had also been recalled. *Id.* Just two days prior to receiving the notice, on May 1, Plaintiff ate half of one bar of the Contaminated Chocolates, then a full bar the following evening. *Id.* ¶ 75. Plaintiff "remembers these amounts exactly because she felt very sick after eating the [] chocolate bars, experiencing unusual chest pain, nausea, and [] felt like her heart was going to stop." *Id.* As a result, she visited the emergency room on May 6, then again on May 13. *Id.*

Plaintiff recounts a variety of health risks and complications that she experienced as a result of her splenic artery aneurysm, as well as other health problems that she alleges resulted from the Contaminated Chocolates. During March 2022, Plaintiff was unable to attend school or go to work at either of her two jobs. *Id.* ¶ 100. She also experienced fear of a medical emergency, and specifically her fear that if her aneurysm were to rupture, it would "lead to massive bleeding and loss of consciousness[, and that] [w]ithout timely intervention, it would result in death." *Id.* ¶ 81. The surgery necessary to treat the aneurysm also carries significant risks, and even successful treatment is likely to lead to health complications, such as lowered immunity and frequent future infections. *Id.* ¶¶ 83–87.

Beginning in June 2023, Plaintiff was treated by Dr. Tehilla Apfel, a gastroenterologist who prescribed her a course of antibiotics and other medication to relieve her symptoms. *Id.* ¶ 94. In 2025, Dr. Apfel diagnosed Plaintiff with the salmonella infection, splenic artery aneurysm, and irritable bowel syndrome. *Id.*

¶ 104. Dr. Apfel also noted that "[t]here is notable published medical literature that establishes a causal relationship between splenic artery aneurysm formation and salmonella infection[]" and that "within a reasonable degree of medical certainty, the identified aneurysm was caused by the Pesek Zman Chocolate contaminated with Salmonella while the above diagnoses are connected." *Id.* ¶ 106.

On March 25, 2025, Plaintiff, proceeding *pro se*, filed a complaint in the Supreme Court of the State of New York, Queens County against Defendants Strauss and Kayco. Not. of Removal, ECF No. 1 ¶ 1. Defendant removed this action to federal court pursuant to the Court's diversity jurisdiction. *Id.* ¶ 10. Plaintiff then filed her amended complaint on May 27, 2025. She is now represented by legal counsel. On October 21, 2025, Strauss filed the instant motion to dismiss for failure to state a claim. Def. Mot. to Dismiss ("Mot."), ECF No. 38. Defendant Kayco filed a letter joining in and adopting the arguments made in that motion. Mot. to Dismiss by Kayco, ECF No. 41.

## DISCUSSION

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "However, to present a plausible claim at the

pleading stage, the plaintiff need not show that its allegations suggesting an agreement are more likely than not true or that they rule out the possibility of independent action, as would be required at later litigation stages such as a defense motion for summary judgment." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012).

Plaintiff pursues three theories of products liability: strict liability, negligence, and implied warranty. Under New York law, a plaintiff is required to make the same showing under all three theories; she "must show that the product at issue was defective and that the defectively designed product was the actual and proximate cause of [her] injury." *Lara v. Delta Int'l Machinery Corp.*, 174 F. Supp. 3d 719, 740 (E.D.N.Y. 2016); *see also Vicuna v. O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419, 449 (E.D.N.Y. 2017) ("Under New York law, 'the strict liability concept of defective design is,' in general, 'functionally synonymous with the earlier negligence concept of unreasonable designing.'" (citation omitted)); *Sokolovic v. CVS Health*, No. 17-CV-6609 (RPK) (SJB), 2023 WL 2742148, at *17 (E.D.N.Y. Mar. 31, 2023) ("To state a claim for breach of the implied warranty of merchantability, a plaintiff must show, as she would for strict products liability or negligence claims, that: (1) the product was defectively designed or manufactured; (2) the defect existed when the manufacturer delivered it to the purchaser or user; and (3) the defect was the proximate cause of the injury." (citation omitted)).

**A. <u>Manufacturing Defect</u>**

The Court first turns to the question of whether Plaintiff has established that

the product was defective. The Complaint alleges that the Contaminated Chocolates suffered from a manufacturing defect. Defendants argue that to establish a manufacturing defect under New York law, Plaintiff must show "that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction." Mot. at 10 (quoting *Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 510 (S.D.N.Y. 2018)). However, courts have observed that "this standard was taken from *Colon v. BIC USA, Inc.*, [199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001),] which involved a motion for summary judgment, not a motion to dismiss." *Williamson v. Stryker Corp.*, No. 12-CV-7083 (CM), 2013 WL 3833081, at *4 (S.D.N.Y. July 23, 2013); *accord Ohuche v. Merck & Co., Inc.*, No. 11-CV-2385 (SAS), 2011 WL 2682133, at *2 (S.D.N.Y. July 7, 2011). "Under some circumstances, such a standard would require the plaintiff to possess technical or scientific knowledge about the inner workings of the product, which would contravene the notice pleading requirement of Federal Rule of Civil Procedure 8, even under the *Iqbal–Twombly* standard." *Williamson*, 2013 WL 3833081, at *4.

As such, "[p]laintiffs are not, at the pleading stage, required 'to allege specific facts about the manufacturing process.'" *McKenzie v. Perrigo*, No. 22-CV-08720 (PMH), 2023 WL 5977297, at *2 (S.D.N.Y. Sep. 14, 2023) (quoting *Williamson*, 2013 WL 3833081, at *4). Generally speaking, "[a] manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." *Orange Transp. Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F.

Supp. 3d 311, 318–19 (W.D.N.Y. 2020) (quoting *Miccio v. Conagra Foods, Inc.*, 224 F. Supp. 3d 200, 204 (W.D.N.Y. 2016)). And "[i]f a product cannot be inspected, a plaintiff can plead a manufacturing defect based on circumstantial evidence." *Howe v. Ethicon, Inc.*, No. 21-CV-2031 (NSR), 2022 WL 2316375, at *4 (S.D.N.Y. June 27, 2022); *accord Tears*, 344 F. Supp. 3d at 510–11.

Plaintiff has adduced more than enough circumstantial evidence to sustain her burden at this stage. First and foremost, the Complaint alleges that in April 2022, the FDA announced a recall of all chocolate products manufactured by Strauss and distributed by Kayco, warning that the products could be contaminated with salmonella. Compl. ¶¶ 26, 41. And just a few days later, Plaintiff was notified by Amazon that the specific chocolates that she had ordered and subsequently consumed had been recalled. *Id.* ¶¶ 75–76. This fact alone permits a reasonable inference that the Contaminated Chocolates were defective.

Defendants contest the significance of the FDA recall, arguing that a recall is not admissible for purposes of establishing product liability, and that the fact of a recall alone is insufficient to establish a manufacturing defect. Mot. at 11. However, every single case cited by Defendants involves a products liability claim at the summary judgment stage, not the pleadings stage. *See* Mot. at 12 (citing, e.g., *Cerqua v. Stryker Corp.*, No. 11-CV-9208 (KBF), 2013 WL 1752284, at *5 (S.D.N.Y. Apr. 23, 2013) (noting that "[t]he fact of the recall alone *cannot raise a triable issue of fact* as to whether the particular implant here at issue was defective" (emphasis added)); *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 468 (N.D.N.Y. 2002) ("[T]he

notice creates no material issues of fact as to whether a defect . . . proximately caused plaintiff's accident.")).

Defendants' arguments are thus unpersuasive. Regardless of whether the FDA recall notice constitutes admissible evidence, it is well established that "[t]he fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal pursuant to Rule 12(b)(6)." *Clarke v. Antonini*, No. 21-CV-1877 (NSR), 2022 WL 4387357, at *11 (S.D.N.Y. Sep. 22, 2022) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123–24 (2d Cir. 1991)). Furthermore, at the pleadings stage, "[w]hile an FDA warning letter or recall is not required to state a manufacturing defect claim, the existence of such actions provides factual support for the claim that a defendant's manufacturing process is flawed, making a manufacturing defect claim significantly more plausible." *Ortiz v. Allergan, Inc.*, No. 14-CV-8188 (PAC), 2015 WL 5178402, at *5 (S.D.N.Y. Sep. 4, 2015).

In any case, the Complaint includes a substantial number of corroborating allegations in addition to the fact that Defendants' products were recalled. The FDA notice, which is linked in the Complaint, indicates that Strauss's products were "being recalled as they were manufactured in a facility in which *Salmonella* was detected in the production line and in the liquid chocolate that is used for the production of the finished products." *Strauss Israel Announces Voluntary Recall of Certain Confectionery Products Because of Possible Health Risk*, U.S. Food and Drug Admin. (Apr. 28, 2022), https://www.fda.gov/safety/recalls-market-withdrawals-

safety-alerts/strauss-israel-announces-voluntary-recall-certain-confectionery-products-because-possible-health.[1] Relatedly, the Israeli Ministry of Health "noted numerous violations, including that maintenance had been performed in [Strauss's] factory for several months while chocolate was being produced in the vicinity." Compl. ¶ 31. Strauss also failed to retain a director of food safety during this period. *Id.* ¶ 32. Finally, Plaintiff alleges that several weeks prior to the Ministry of Health's audit, "there was a pigeon infestation in the manufacturing area of the site," and that pigeons can be a source of salmonella contamination. *Id.* ¶¶ 11, 34.

Plaintiff has thus adequately pled that the Contaminated Chocolates were defective.

**B. <u>Proximate Cause</u>**

Plaintiff has also established that the Contaminated Chocolates were a proximate cause of her injury. Under New York law, "an act or omission is regarded as a legal cause of an injury if it was a substantial factor in bringing about the injury." *Locust Valley Water Dist. v. Dow Chem. Co.*, 465 F. Supp. 3d 235, 240 (E.D.N.Y. 2020) (quoting *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig. ("MTBE")*, 725 F.3d 65, 116 (2d Cir. 2013)). A "substantial" factor is one that "ha[s] such an effect in producing the injury that reasonable people would regard it as a cause of the injury." *MTBE*, 725 F.3d at 116 (quoting *Rojas v. City of New York*, 617 N.Y.S.2d 302, 305

[1] The Court may "rely upon documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, No. 20-CV-5649 (LAK), 2021 WL 2582132, at *4 (S.D.N.Y. June 23, 2021) (quoting *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011)).

(N.Y. App. Div. 1994)). Importantly, a plaintiff "need not eliminate every other potential cause of her injury in order to plead causation." *Candelaria v. Conopco, Inc.*, No. 21-CV-6760 (FB) (TAM), 2023 WL 2266047, at *3 (E.D.N.Y. Feb. 28, 2023).

This is not a demanding pleading standard. "Proximate cause requires only 'some direct relation between the injury asserted and the injurious conduct alleged,' and excludes only those 'link[s] that [are] too remote, purely contingent, or indirect.'" *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011) (citation omitted). As such, courts decline to find proximate cause at the pleading stage "only where no reasonable person could find causation based on the facts alleged in the complaint, such as when one could not find probable cause based on the facts in the Complaint without resorting to wild speculation." *Candelaria*, 2023 WL 2266047, at *2 (citation modified) (quoting *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 415 (S.D.N.Y. 2011)); *see also id.* ("Courts are loathe to dismiss claims for lack of proximate cause at the pleading stage.").

Plaintiff easily meets this bar. Plaintiff was notified in May of 2022 that the Contaminated Chocolates that she had purchased on Amazon were the subject of the FDA recall due to salmonella contamination. Compl. ¶¶ 75–76. In connection with those chocolates, she experienced a wide range of negative symptoms consistent with a severe salmonella infection. *Id.* ¶¶ 51–54. For example, after consuming the Contaminated Chocolates for the first time in the "second or third week of March 2022," Plaintiff was hospitalized once on March 29, then again on March 30, during which time she was diagnosed with a splenic artery aneurysm. *Id.* ¶¶ 46, 52, 55. She

stopped consuming the Contaminated Chocolates from that date through April 30. *Id.* ¶ 62. Then on May 1 and May 2, Plaintiff ate one and a half bars of the Contaminated Chocolates, an amount she "remembers . . . exactly because she felt very sick after eating [them], experiencing unusual chest pain, nausea, and [] [feeling] like her heart was going to stop." *Id.* ¶ 75. As a result, she was hospitalized again on May 6 and May 13. *Id.* The Complaint thus clearly ties Plaintiff's medical injuries to her consumption of the defective chocolates.

In opposition, Defendants argue only that the FDA recall only indicated that Strauss's products "may potentially be contaminated with Salmonella," and that Plaintiff otherwise failed to adduce evidence directly tying the Contaminated Chocolates to her medical symptoms — for example, results of a blood test showing that she tested positive for salmonella after consuming the chocolates. *See* Mot. at 11–12. As an initial matter, such evidence is not necessary to establish proximate cause at the pleadings stage, particularly in light of the warnings by courts in our circuit that "such a standard would require the plaintiff to possess technical or scientific knowledge" in contravention of "the notice pleading requirement of Federal Rule of Civil Procedure 8." *Williamson*, 2013 WL 3833081, at *4; *see also Ohuche*, 2011 WL 2682133, at *2–3. Moreover, the Complaint contains statements by Plaintiff's treating gastroenterologist Dr. Tehilla Apfel, who diagnosed her with salmonella and stated that "[t]here is notable published medical literature that establishes a causal relationship between splenic artery aneurysm formation and salmonella infection[,]" such that "within a reasonable degree of medical certainty,

the identified aneurysm was caused by the Pesek Zman Chocolate contaminated with Salmonella." Compl. ¶¶ 104, 106.

Courts in this circuit regularly find proximate cause on substantially thinner allegations. In *In re Laundress Marketing and Product Liability Litigation*, 2024 WL 4767030, the court found that the plaintiffs sufficiently established that harmful bacteria in Laundress's cleaning products was the proximate cause of their injuries based on allegations that "[(1)] The Laundress's products contained three types of harmful bacteria, [(2)] that Plaintiffs purchased and used those products, and [(3)] that, thereafter, [Plaintiffs] were medically diagnosed to have been affected by one or more of the three types of bacteria." *Id.* at *3. The court found that "The Laundress's contention that Plaintiffs merely allege that 'there is a *potential* for contamination, not that all Products subject to the recall are in fact contaminated' thus verge[d] on the frivolous." *Id.* Notably, the *Laundress* court also specifically held that "[a]t this stage in the litigation, Plaintiffs may rely primarily on The Laundress's own recall notice rather than, for example, their own scientific analyses of The Laundress's products." *Id.*

*Porrazzo*, 822 F. Supp. 2d, is also instructive. There, the plaintiff experienced adverse heart symptoms and tested for elevated blood mercury levels after consuming canned tuna fish as his "major source of protein from approximately January 2006 to October 2008." *Id.* at 415. Following the test results, the plaintiff stopped consuming tuna fish, and his mercury levels returned to normal. *Id.* The court found that "[t]his timeline provide[d] more than sufficient factual allegations to make it plausible that

Plaintiff's ingestion of Defendants' tuna fish was the cause of his injuries." *Id.* This was despite the fact that the complaint did not allege that the plaintiff ever received any particular diagnosis linking his symptoms to his tuna consumption. *See id.* at 414–16. "That Plaintiff's mercury levels were dangerously high until he stopped eating Defendants' tuna fish, whereupon they returned to normal and his symptoms disappeared, more than plausibly supports the conclusion that the tuna caused the elevated mercury and the elevated mercury caused his symptoms. No more is required at the motion to dismiss stage." *Id.* at 415 n.7; *see also Candelaria*, 2023 WL 2266047, at *3 (finding proximate cause from allegations that plaintiff's "hair loss and other symptoms matching those of dermatitis stopped once she ceased using [the defendant's] products"). Here, not only does the Complaint establish an even shorter timeline between Plaintiff's injuries and her consumption of the Contaminated Chocolates, it also directly alleges that those symptoms were caused by a salmonella infection from those chocolates.

Plaintiff has thus shown that the Contaminated Chocolates were at least a "substantial factor" for her medical injuries. No more is required at this stage.

### C. <u>Implied Warranty</u>

Finally, Defendants separately argue that Plaintiff's claim for breach of implied warranty of merchantability should be dismissed because she failed to show that Defendants "had reason to know Plaintiff's 'particular purpose' for purchasing the chocolates." Mot. at 18 (citing *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 896 (E.D.N.Y. 2018)). This is a frivolous objection. "Under New York law, 'where an item

of food intended for human consumption is sold, there is an implied warranty that the item is fit for human consumption and free from any harmful substance when it leaves the manufacturer's control." *Bickham v. Coca Cola Refreshments USA, Inc.*, No. 14-CV-3341 (VB), 2015 WL 7301078, at *7 (S.D.N.Y. Nov. 18, 2015); *accord Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205, 215–16 (W.D.N.Y. 2022). Chocolates contaminated with salmonella are obviously unfit for human consumption.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is denied in full.

**SO ORDERED.**

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: September 29, 2026
Brooklyn, New York